## Richmond.

### PERRIN v. COMMONWEALTH.

March 26th, 1891.

1. CRIMINAL PROCEEDINGS—*Larceny—Findings—Evidence.*—Mere possession of lost goods is not even *prima facie* evidence of larceny.
2. IDEM—*Knowledge of owner.*—To constitute larceny in finder of lost goods, the finder must know the owner at time of finding, or the goods must have some mark about them presumably understood by him, whereby the owner can be ascertained, and he must appropriate them at that time with intent to take entire dominion over them.
3. IDEM—*Case at bar.*—The evidence in case here, *held*, insufficient to show that the finder of the lost check had any knowledge, or means of knowledge, of the owner's name, and does not warrant the conviction of larceny.
4. IDEM—*Petit larceny—Case at bar.*—The check in the case here being only for $10.79, defendant, if guilty at all, would be guilty of petit larceny.

Error to judgment of circuit court of Gloucester county, rendered February 5th, 1891, affirming the judgment of the county court rendered January 14th, 1891. The plaintiff in error, Peter Perrin, was, on the 3d day of November, 1890, indicted in the county court of Gloucester county as follows:

"That Peter Perrin, on the 20th day of October, 1890, in the said county, a certain leather pocketbook, containing one hundred dollars in United States currency of the value of one hundred dollars; one check for the payment of ten dollars and seventy-nine cents, signed by S. Tourtelott & Co., and payable to R. A. Roane & Brother, of the value of ten dollars and seventy-nine cents, the said pocketbook, United States

currency and check, at the time of committing the felony, being the property of R. C. Tinsley, the proprietor thereof, feloniously did steal, take, and carry away," &c.

Upon the charge formulated in the foregoing indictment, the prisoner was tried, convicted, and sentenced, in the county court of Gloucester county, to be confined for a term of two years in the penitentiary, to which said judgment he obtained a writ of error from the circuit court of Gloucester county, which, by its judgment, affirmed the said judgment of the county court aforesaid.

*Wm. B. Taliaferro*, for the plaintiff in error.

*Attorney-General R. Taylor Scott*, for the Commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

The evidence in the record, even that, alone, which was adduced by the prosecution, and excluding the conflicting testimony for the defence, is plainly insufficient to warrant the verdict of the jury and the judgment of the court. The Commonwealth's chief witness, R. C. Tinsley, proves that, on a Saturday evening, early in August, 1890, he lost the pocketbook and contents described in the indictment, and alleged to have been stolen, out of his hip-pocket, on the public county road, on his way from his store to his home, ten miles distant, both being in Gloucester county.

Peter Perrin, the prisoner, a colored man, with a family, resident in Gloucester county, in the neighborhood of R. C. Tinsley, who could neither read nor write, in passing along the public road, on a Sunday morning, early in August (the day of the month not stated, but, presumably, the next day after the Saturday evening when Mr. Tinsley says he lost the pocketbook on the public road, going from his store to his home), left his house to go down to a neighbor, Moses Gayle,

and saw some papers scattered by the roadside, two of which he picked up; and upon arriving at Gayle's house, he told Gayle of the circumstance, and, showing one of the papers to him, asked him what it was. Gayle told him, that he could not read or write, and he did not know what it was. Perrin then put the paper in his money-purse, and kept it there for several weeks, until he went down for his wagon or buggy to Mr. Forrest's shop, in Mathews county. These facts are not contradicted, nor are they in conflict with any of the testimony for the Commonwealth.

R. H. Forrest, a witness for the Commonwealth, testified: "I keep a work-shop in Mathews county. Sometime last August, Peter Perrin brought a buggy to my shop, which I repaired for him. A week or two afterwards, he came after it. My bill amounted to $5.00. He took out two dollars and offered me, and said that was all the money he had. I saw a *paper* in his purse, and asked him if that was not a check? He said he was sorry I had seen it; that he had not intended for me to see it. I asked him why? He said because he did not want to break it; that if he broke it, he would spend it. He objected to my having the check. I told him, as he had the check and could pay me, he could not get the buggy without paying me what he owed on it. After some time, he consented for me to have it. He told me, that he had been working for R. A. Roane & Brother in the highlands, and that, not having the money to settle with him, they had given him the check in payment." "He handed me the check, and I saw it was for $10.79. Mr. Tinsley's name was not on the check, and I did not know that Mr. Tinsley had any connection with it. I told him to endorse it, and I would pay him the difference between it and my bill. He said he could not write. We went over to the blacksmith shop of Mr. Atherton, my blacksmith, to endorse it. Mr. Atherton did write his (Peter Perrin's) name on the back of the check. I paid him the difference in cash, $5.79."

There is no evidence in the record that the prisoner, Peter Perrin, had ever seen, or had in his possession, the pocketbook (which Mr. Tinsley says he lost on the public road, and which may have been found by any one, and some one who could read and who took the money out of it and threw away the papers which it contained), or that he had possession of any of the contents of the lost pocketbook, other than the check for $10.79, not payable to Mr. Tinsley, and which did not have Mr. Tinsley's name upon its face or upon its back.

The evidence of the Commonwealth not only fails to prove the felony charged in the indictment against the prisoner, but it proves the prosecution out of the jurisdiction of the county court of Gloucester county, because, even if the hesitating and unwilling yielding of Peter Perrin to the persuasion and demand of the witness, Forrest, to convert and pass to him the check as the only condition upon which he would let him have his buggy, weeks after he had found it, can be held to be a conversion *animo furandi*, it was not only not coincident with the finding, but it was in the county of Mathews; and, being only for the value of $10.79, it would prove only the offence of *petit larceny* at most.

"The mere possession of goods which have been actually lost does not furnish any conclusive or even *prima facie* proof of guilt; of itself it does not raise the suspicion of guilt." "To constitute larceny in the finder of goods actually lost, it is not enough that the party has general means, by the use of proper diligence, of discovering the true owner. He must know the owner *at the time of the finding*, or the goods must have some mark about them understood by him, or presumably known by him, by which the owner can be ascertained; and he must appropriate them, at the time of finding, with intent to take entire dominion over them." *Hunt* v. *Commonwealth*, 13 Gratt., 757; *Tanner's Case*, 14 Gratt., 635; Bishop's Crim. Law, Vol. II.

The verdict of the jury is contrary to the law and the evi-

dence, and it must be set aside; and the judgment of the circuit court affirming the erroneous judgment of the county court of Gloucester county is erroneous, and both of the said judgments must be reversed and annulled.

RICHARDSON, J., dissented.

JUDGMENT REVERSED.